**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

97 JUN 25 AM 10: 24
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| UNJANETTA HILL, | ) |
| Plaintiff, | ) |
| vs. | ) CV 96-PT-0970-S |
| ADAMSON FORD, | ) |
| Defendant. | ) |

**ENTERED**
JUN 2 5 1997

### Memorandum Opinion

This cause comes on to be heard on a motion for summary judgment filed by defendant Adamson Ford on January 21, 1997. In its motion, the defendant contends that the plaintiff, Unjanetta Hill ("Hill"), can state neither an Employee Polygraph Protection Act of 1988 ("EPPA") claim, a Title VII race discrimination claim nor a § 1981 race discrimination claim.

On a motion for summary judgment, the court must assess the proof to ascertain whether there is a genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only if this court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing this court of the grounds for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes prove the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a



genuine issue of material fact." Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing the presence of a genuine issue for trial. Celotex, 477 U.S. at 324. The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . " in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In resolving whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the prism of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). Considering the above, this court must examine the evidence to determine the existence of genuine issues of material fact as to the various claims.

## Facts

The defendant hired the plaintiff, a black female, in November 1989 as a courtesy van driver. In 1993 the defendant promoted her to the position of assistant warranty clerk and in August 1994 to the position of payroll/title clerk.

The plaintiff and defendant spend much of their briefs discussing whether the plaintiff took $1,261.05 from the defendant or whether, at least, the defendant had a reasonable basis for believing so. The defendant states that the funds disappeared in small amounts between July 1994 and on September 2, 1994. Apparently, under the alleged scheme through which the money was taken, an employee would first collect payment from a customer based on the original receipt. The employee would then void that receipt and reprint a second receipt in a lesser amount. The amount allegedly paid under the second receipt would be placed by the employee into the defendant's cash drawer, while the difference between the amount recorded on the first receipt and that recorded on the second receipt was pocketed by the employee.

The defendant contends that in the time period during which the receipts were being inappropriately reprinted, the plaintiff was in the cashier's office,[1] as were Donna Moody

---

[1] Or, at least that it had reason to believe that the plaintiff was in the cashier's office.

("Moody"), a cashier, and Gordon Zane ("Zane"), who was, until August 1994, one of the plaintiff's supervisors. Because the plaintiff and Moody were among the individuals present when receipts were reprinted, the defendant suspected that one of them had knowledge of who may have taken the missing funds, if, in fact, one of them had not taken the money. The defendant states that the plaintiff had voided or otherwise altered entries in the cash receipts journal. Because of the defendant's suspicions, both the plaintiff and Moody were placed on leave of absence with pay on September 12, 1994.

On September 15, 1994, the defendant requested the plaintiff and Moody each to take a polygraph examination. The plaintiff refused and was terminated from her employment on September 23, 1994. Moody ultimately acquiesced in the defendant's request and was retained. On October 25, 1994, the plaintiff filed a charge with the EEOC stating that the defendant had disciplined her because of her race.[2]

## Contentions & Analysis

### EPPA Claim.

The EPPA prohibits an employer from requiring an employee to submit to a polygraph test and from disciplining or terminating an employee for refusing to take a polygraph test, except in certain limited circumstances. 29 U.S.C. § 2002.[3] Requiring an employee to take a polygraph exam

---

[2] The EEOC's letter which accompanied the Notice of Right to Sue concluded, "Based on the above facts, EEOC has concluded that it is not likely that any further investigation of your charge will result in finding a violation of the statute in question."

[3] 29 U.S.C. § 2002 states:

Except as provided in sections 2006 and 2007 of this title, it shall be unlawful for any employer engaged in or affecting commerce or in the production of goods for commerce--
    (1) directly or indirectly, to require, request, suggest, or cause any employee or prospective employee to take or submit to any lie detector test;
    (2) to use, accept, refer to, or inquire concerning the results of any lie detector test of any employee or prospective employee;
    (3) to discharge, discipline, discriminate against in any manner, or deny employment or promotion to, or threaten to take any such action against--
        (A) any employee or prospective employee who refuses, declines, or fails to take or submit to any lie detector test, or
        (B) any employee or prospective employee on the basis of the results of any lie detector test. . .

in violation of the Act exposes the employer not only to an action for civil penalties by the Secretary of Labor, 29 U.S.C. § 2005(a), but also to suit from private injured parties. 29 U.S.C. § 2005(c). The defendant contends that it is not liable to the plaintiff under the EPPA because the polygraph test request was incident to an ongoing investigation of economic loss by the defendant. 29 U.S.C. § 2006(d). For an employer to test an employee for an economic loss, the plaintiff argues, the EPPA states that the employer must have a reasonable suspicion that the employee is involved in the economic loss. 29 U.S.C. § 2006(d)(3). The plaintiff states that mere access to the missing funds does not give rise to reasonable suspicion, and therefore the defendant was not permitted to test the plaintiff. The defendant replies that its suspicion was based upon not only the plaintiff's access to the funds, but also upon the plaintiff's having voided or otherwise altered entries in the cash receipts journal.[4]

An employer can require an employee to submit to a polygraph exam under the EPPA only incident to an ongoing investigation of economic loss. Even if there is an ongoing investigation, an employer must meet certain provisions before requiring an employee to submit to a polygraph test. An employee can only be required to undergo a polygraph examination if:

> (1) the test is administered in connection with an ongoing investigation involving economic loss or injury to the employer's business, such as theft, embezzlement, misappropriation, or an act of unlawful industrial espionage or sabotage;
> (2) the employee had access to the property that is the subject of the investigation;
> (3) the employer has a reasonable suspicion that the employee was involved in the incident or activity under investigation; and
> (4) the employer executes a statement, provided to the examinee before the test, that--
> > (A) sets forth with particularity the specific incident or activity being investigated and the basis for testing particular employees,
> > (B) is signed by a person (other than a polygraph examiner) authorized to legally bind the employer,
> > (C) is retained by the employer for at least 3 years, and
> > (D) contains at a minimum--
> > > (i) an identification of the specific economic loss or injury to the business of the employer,
> > > (ii) a statement indicating that the employee had access to the property that is the subject of the investigation, and
> > > (iii) a statement describing the basis of the employer's reasonable suspicion that the employee was involved in the incident or activity under investigation.

---

[4] Cases interpreting the EPPA are few. However, the statute is a paragon of lucidity in comparison to numerous other Federal laws and regulations promulgated by the Department of Labor pursuant to the Act make crystalline its already clear provisions.

29 U.S.C. §2006(d). At issue is whether the defendant had a reasonable suspicion that the plaintiff was involved in the taking of money from it. To obtain summary judgment, the defendant must demonstrate that no reasonable trier of fact could find otherwise that its suspicion of the plaintiff was reasonable. The court concludes, as a matter of law, that the totality of the circumstances establishes that the defendant had reasonable suspicion.

### Title VII and § 1981 claims.

The plaintiff argues that the defendant violated Title VII and § 1981 (1) because it terminated her and (2) because it required her to take a polygraph exam because of her race. To prove a prima facie case of discriminatory termination under the McDonnell-Douglas proof scheme, a plaintiff must prove "(1) membership in a protected class, (2) qualification for the position held, (3) termination, (4) and replacement with a person outside the protected class." Walker v. NationsBank of Florida, 53 F.3d 1548, 1556 (11th Cir. 1995) (citing Rollins v. TechSOUTH, Inc., 833 F.2d 1525, 1532 n. 14 (11th Cir.1987)). The plaintiff has satisfied her prima facie case under McDonnell Douglas on her termination claim. She is black, was terminated from a job for which she is qualified and was replaced by a white female.

However, her prima facie showing is not so clearly satisfied on her claim that she was discriminatorily disciplined by being requested to undergo a polygraph examination.[5] The Eleventh Circuit stated the conditions under which an employee who is disciplined can state a prima facie case of discrimination in Nix v. WCLY Radio/Rahall Comm., 738 F.2d 1181, 1185 (11th Cir. 1984) (emphasis added):

> In McDonald v. Santa Fe Trail Transportation Co., []427 U.S. 273 [(1976)], the Court held that an employer would violate Title VII if it fired black employees who participated in a theft of cargo while retaining whites guilty of the same offense. Id., 427 U.S. at 282-84 []. We have consistently held that a plaintiff fired for misconduct makes out a prima facie case of discriminatory discharge if he shows that he is a member of a protected class, that he was qualified for the job from which he was fired, and "that the misconduct for which [he] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained". Davin v. Delta Air Lines, Inc., [] 678 F.2d 567, 570 [(5th Cir. Unit B 1982)]; accord Rohde v. K.O. Steel Castings, Inc., [] 649 F.2d 317, 322-23 [(5th Cir.1981)]; Brown v. A.J. Gerrard Mfg. Co., [] 643 F.2d 273, 276 [(5th Cir.1981)]; Green v. Armstrong Rubber Co., [] 612 F.2d 967, 968 [(5 Cir.1980)](per curiam), cert. denied, [] 449 U.S. 879 [(1980)]; Turner v. Texas Instruments, Inc., [] 555 F.2d 1251, 1255 [(5th Cir. 1977)]; see also Anderson v. Savage Laboratories, []675 F.2d 1221, 1224 [(11th

---

[5] The court is of the opinion that the "discipline" cases are analogous.

Cir.1982)]. The prima facie case is established even if the plaintiff's replacement is also a member of the protected class. Cockrham v. South Central Bell Telephone Co., [] 695 F.2d 143, 145 [(5th Cir. 1983)](per curiam); EEOC v. Brown & Root, Inc., [] 688 F.2d 338, 340 [(5th Cir.1982)]; Byrd v. Roadway Express, Inc., [] 687 F.2d 85, 86-87 [(5th Cir.1982)]. "The principal focus of [Title VII] is the protection of the individual employee, rather than the protection of the minority group as a whole." Connecticut v. Teal, [] 457 U.S. 440, 453-54 [(1982)].

Also, in Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989), the Court explained:

[I]n cases involving alleged racial bias in the application of discipline for violation of work rules, the plaintiff, in addition to being a member of a protected class, must show either (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct.

The plaintiff can make out this version of the prima facie case only if she can show that others who engaged in or were suspected of engaging in similar misconduct to her were not required to undergo a polygraph examination. This the plaintiff cannot do. Moody, who was, with the plaintiff, suspected of taking the money, was requested to submit to a polygraph examination. Moody is white. She took and passed the test.

Once the plaintiff states a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the termination. Combs v. Plantation Patterns, 106 F.3d 1519, 1527 (11th Cir. 1997). The defendant offers as a legitimate nondiscriminatory reason for the plaintiff's termination that it suspected her of involvement in the disappearance of funds. This suspicion, which had only led to the plaintiff's being laid off and to her being requested to undergo a polygraph examination, was enhanced by the plaintiff's refusal to take the polygraph test.[6] As a result, the defendant states, the plaintiff was terminated. The plaintiff does not address this reason of the defendant, instead stating that the defendant's offered reason for her termination was that the plaintiff violated a policy on voiding cash receipts.

If a defendant carries its burden of producing legitimate, nondiscriminatory reasons for its decision, the presumption of discrimination created by the McDonnell Douglas framework "drops from the case," and "the factual inquiry proceeds to a new level of specificity." Burdine, 450 U.S. at 255 & n. 10 []. However, elimination of the presumption does "not imply that the trier of fact no longer may consider evidence previously introduced to establish a prima facie case." Id. at 255 n. 10 []. As the Supreme Court has explained:
A satisfactory explanation by the defendant destroys the legally mandatory inference

---

[6] "Legitimate," in this context, does not necessarily mean legal. The term "legitimate," as it modifies the terms "nondiscriminatory reason," refers to an "authentic" or "believable" nondiscriminatory reason.

> of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.
>
> Id.
>
> Once a defendant satisfies its intermediate burden of production, and the initial presumption of discrimination accompanying the prima facie case has been eliminated, the plaintiff has the opportunity to discredit the defendant's proffered explanations for its decision. According to the Supreme Court:
>
>> [The plaintiff] now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision . . . [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.
>
> Id. at 256 [] (emphasis added) (citation omitted). In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. Id.; McDonnell Douglas, 411 U.S. at 804 [].

Combs v. Plantation Patterns, 106 F.3d at 1527-28. The plaintiff asserts that discrimination was present in the process leading up to her termination because one individual involved in the termination process, Zane, had a discriminatory animus. Before the plaintiff's termination, Zane had allegedly made offensive comments about blacks, including asking the plaintiff from which African tribe she derived and whether she wore a bone in her nose; suggesting that the plaintiff lived in the projects; calling the plaintiff Aunt Mammy; and commenting that "y'all all steal," in reference to all blacks and with respect to the plaintiff in particular.[7] Zane apparently had at least some small involvement in the process that resulted in the plaintiff's termination. He allegedly suggested the administration of the polygraph test and provided the name of the polygraph examiner and he purportedly was the plaintiff's supervisor for at least some of the time in question. It would not be unreasonable to infer that his alleged expressed perceptions that blacks all steal influenced the choices leading to the termination of the plaintiff.[8] The evidence that the

---

[7] Zane's alleged sexist remarks are irrelevant.

[8] The comments of Zane will not suffice to resurrect the plaintiff's discriminatory polygraph claim, however. Racial animus may have colored the perceptions of Zane in suggesting the polygram. However, colored perceptions and racial animus do not create a discrimination cause of action unless it can be shown that the discrimination resulted in the plaintiff's being treated differently. There is no showing that the plaintiff was treated any different that Moody, who was white.

termination was discriminatory is perhaps weak, but weak cases must sometimes be tried. Much will depend on Zane's role. The court will carefully consider this evidence in context at trial.

## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment will be **GRANTED** in part and **DENIED** in part.

This 25 day of June 1997.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE